UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ANTHONY RENNIE JONES,<br><br>Defendant. | Case No. 1:13-cr-00064-DCN-1<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Anthony Jones' objections to a portion of the special terms of his supervised release.[1] These are new terms the Court will be imposing upon him after a recent violation of his current supervised release, for which he is currently serving a 36-month prison term. Dkt. 99, at 3–4.

Having reviewed the record, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, the Court finds good cause to OVERRULE Jones' objections and impose the special terms of his supervised release.

---

[1] Jones has not filed anything formally objecting to the Court's imposition of these new terms and conditions. He simply raised his objections at sentencing on November 4, 2020.

## II. BACKGROUND

On August 3, 2013, Jones pleaded guilty to the Distribution of Methamphetamine, a violation of 21 U.S.C. § 841(a)(1). Dkt 33. On June 3, 2014, the Court sentenced Jones to an 84-month prison term and four years of supervised release. Dkt. 69. Upon completion of his term of incarceration, Jones was discharged from prison, and his supervised release began on September 19, 2019. Dkt. 91, at 1. In the initial offense, Jones repeatably sold methamphetamine to confidential informants at his place of employment, which at the time was The Hookup Barbershop. Dkt. 98, at 2. Additionally, a subsequent search of The Hookup Barbershop revealed "$14,901 in cash, paraphernalia, and directions for cooking methamphetamine." *Id*.

Upon his release, Jones wasted no time in backsliding into his old lifestyle; within "one month of beginning supervision, the defendant began violating the conditions of his supervision by consuming alcohol." *Id*. at 3. After a pattern of noncompliance emerged, including multiple failures to submit for urinary analysis, failures to submit monthly reports, and continued alcohol use, Jones' probation officer began conducting surveillance of Jones' residence. *Id.* Jones' probation officer also began conducting unannounced visits after observing Jones driving without a valid driver's license (which he has been convicted of sixteen times). *Id.*

On one such visit, in response to yet another missed urinary analysis appointment, the probation officer, accompanied by Nampa Police Officers, discovered 39 grams of cocaine in Jones' residence. *Id* at 4. Before finding the cocaine, a known Norteno gang member arrived at Jones' residence claiming he was there for a haircut. *Id*. Upon

discovering the cocaine, the Norteno gang member departed, and the officers searched Jones' residence. *Id*. In Jones' garage was a barber's chair, and located next to the chair was a scale with white residue on it. *Id*. As a result of the search, the probation officer confiscated Jones' cellphone, which, when examined later, showed that Jones was in regular contact with Norteno gang members and was actively selling cocaine. *Id* at 5.

On November 4, 2020, Jones admitted to violating terms of his supervised release as outlined in section 1B of the revocation charges: " . . . the defendant possessed cocaine with intent to distribute . . . ." Dkt. 91, at 1. However, Jones objected to the imposition of two new special terms of his supervised release. First, that "the defendant shall not be employed in any capacity related to The Hookup Barbershop nor shall he perform any unpaid or volunteer activities at this business during the term of supervised release without permission of the probation officer." Dkt. 99, at 4. And second, that "the defendant shall not operate a business from his own residence without the permission of the probation officer." *Id.*

### III. LEGAL STANDARD

There are a handful of statutes that govern supervised release. Furthermore, there is Ninth Circuit case law that has interpreted portions of the statutory framework. A proper analysis requires an examination of both.

**A. Statutory Framework**

    **i.    18 U.S.C. § 3583 – Inclusion of a Term of Supervised Release**

In general, "the court, in imposing a sentence to a term of imprisonment . . . may include as a part of the sentence requirement that the defendant be placed on a term of

supervised release after imprisonment . . . ." 18 U.S.C. § 3583(a).

Additionally, if the determination is made that supervised release is necessary when assessing the "length of the term *and the conditions* of supervised release," the court "shall consider the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." 18 U.S.C. § 3583(c)" (emphasis added).

Likewise, as a discretionary act, the court may order additional conditions of supervised release, so long as such conditions– (1) are reasonably related to the factors set forth in 3553; (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553; and (3) are consistent with the policy statements issued by the Sentencing Commission. *See* 18 U.S.C. 3583(d)(1)–(3).

### ii. 18 U.S.C. § 3563 – Conditions of Probation

Also, the court may impose further terms so long as those terms are reasonably necessary to achieve the goals of 3553(a)(2). To achieve those goals, the court may impose as a term of supervised release that the defendant:

> (5) refrain, in the case of an individual, *from engaging in a specified occupation, business, or profession* bearing a reasonably direct relationship to the conduct constituting the offense, or engage in such a specified occupation, business, or profession only to a stated degree or under stated circumstances;
> (6) *refrain from frequenting specified kinds of places* or from associating unnecessarily with specified persons;
> (7) *refrain from excessive use of alcohol, or any use of a narcotic drug or other controlled substance*, as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802), without a prescription by a licensed medical practitioner. (Emphasis added)

18 U.S.C. § 3563(b)(5)–(7).

### iii. 18 U.S.C. § 3553 Factors to be Considered

When the Court imposes a sentence, it must impose a sentence that "is sufficient, but not greater than necessary to comply with the purposes" enumerated in § 3553(a)(1) and (2)(A)(B)(C). That is, the Court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The sentence must also "reflect the seriousness of the offense, [] promote respect for the law, and [] provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Finally, any sentence imposed must "afford adequate deterrence to criminal conduct" and "protect the public from future crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A)–(C).

To lend a machete to the statutory thicket, the Court may determine, in its discretion, whether to impose additional terms to a defendant's sentence, specifically in relation to the terms of supervised release. If the Court so chooses, it may restrict the defendant from certain occupations, from going to certain places, and from consuming drugs and alcohol. These restrictions must be in line with § 3553. That is, they must reflect the seriousness of the crime, consider the circumstances of the offense and the history of the defendant, and act as a meaningful deterrent for future crimes—but also not be greater than is necessary to accomplish the goal itself .

### B. Case Law: Occupational Restrictions

"The district court may impose an occupational restriction if the court determines that a reasonably direct relationship exists between the defendant's business and his offenses." *United States v. Riley*, 342 F. App'x 315, 319 (9th Cir. 2009) (cleaned up). Additionally, the court may place an occupational restriction if the restriction would be

"reasonably necessary to protect the public because there is reason to believe that the defendant would continue similar unlawful conduct." *Riley,* 342 F. App'x at 319 (cleaned up*); see also* U.S.S.G. § 5F1.5(a).

However, there is heightened scrutiny for occupational restrictions if the defendant can show that the condition will prevent him from engaging in his previous occupation (the occupation held before conviction). *See United States v. Stoterau*, 524 F.3d 988, 1009 (9th Cir. 2008). If the defendant can establish that the restriction prevents him from engaging in the field he had before his conviction; the condition must be narrowly tailored to cover restrictions related to the nature of the conviction. *See United States v. Weber*, 186 F. App'x 751, 755 (9th Cir. 2006) (finding that a registered sex offender's occupational restriction was narrowly tailored because it only prohibited him from working with businesses "whose principal product is the production and/or selling of material depicting and/or describing sexually explicit conduct").

### IV. DISCUSSION

Jones objects to two new terms of his supervised release: (1) that The Hookup Barbershop shall not employ him in any way; and (2) that he shall not run a business out of his place of residence without the permission of the probation officer. Dkt 99, at 4. Both restrictions act as a type of occupation restriction.

The Court begins by noting—as the Government did—that neither the ban of Jones' residence serving as a place of employment or the prohibition on working at The Hookup Barbershop prevent Jones from gaining employment as a barber. Indeed Jones would be encouraged to find a reputable barbershop and apply his trade and training in a legitimate

endeavor. He just cannot do it from his residence or The Hookup Barbershop—sites where he has been caught selling methamphetamine and cocaine. Consequently, since Jones is not categorically banned from being a barber, the occupation he held before his conviction, his restriction falls short of the heightened scrutiny standard articulated in *United States v. Stoterau*, 524 F.3d 988 (9th Cir. 2008).

When the 39 grams of cocaine were discovered during the home inspection, a known Norteno gang member stopped by Jones' house. Dkt. 98, at 4 Although Jones claims the gang member was there to receive a haircut, a search of Jones' residence revealed a scale with white powder on it near the barber's chair. *Id.* It is discernable to the Court that there exists a "reasonably direct relationship to the conduct constituting the offense," and the haircut business Jones' was operating out of his house. 18 U.S.C. § 3563(b)(5).

Furthermore, selling cocaine is a serious offense; selling cocaine while on supervised release demonstrates a complete lack of respect for the law. Moreover, Jones sold cocaine out of his residence. The Court is hard-pressed to find an effective deterrent to Jones' actions other than to prohibit him from conducting any business from his place of residence, absent his probation officer's prior approval. The Court, taking into consideration the defendant's history, the circumstances of the crime, the seriousness of the offense; and bearing in mind the need to deter future crimes to protect the public and aid Jones' rehabilitation, cannot allow Jones to return to what is, in essence, the scene of the crime. The Court, therefore, will OVERRULE Jones' objection to the special term of his supervised release, which bars him from running a business out of his place of residence.

Next is Jones' objection to a term of his supervised release which prohibits him from working in any way for The Hookup Barbershop. Dkt. 99, at 1. The record positively shows that the defendant used The Hookup Barbershop (under the guise of cutting hair) as the place where he conducted his business of selling methamphetamine. Dkt 98, at 2 (noting that large amounts of money, drug paraphernalia, and directions on the manufacture of methamphetamine were discovered at The Hookup Barbershop).

Once again, taking into consideration Jones' history, the circumstances of the crime, the seriousness of the offense—and keeping in mind the goal of deterring future crimes to protect the public and promoting Jones' rehabilitation the Court reasonably believes the illegal conduct will continue if Jones is allowed to continue his employment at The Hookup Barbershop. Accordingly, the Court will OVERRULE Jones' objection to the special terms of his supervised release which bars him from working or volunteering at The Hookup Barbershop.

## V. ORDER

The Court HEREBY ORDERS:

1. Jones' objection to the special terms of supervised release is OVERRULED, and the terms shall go into effect and as part of the sentence imposed upon him.

DATED: June 28, 2021

David C. Nye
Chief U.S. District Court Judge